[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case presents a petition for termination of the parental rights of Lisa L. and Mario L. to their daughter Caitlyn L., whose date of birth is June 14, 1993. This child first came into the care of the Department of Children and Families, (hereinafter the "Department") on July 20, 1994, pursuant to an Order of Temporary Custody (hereinafter "OTC"). Caitlyn was adjudicated as neglected on August 11, 1994, and disposition was continued until September 29, 1994, when the OTC was vacated and Caitlyn was returned to her mother's care under Protective Supervision for six (6) months. On March 16, 1995, Protective Supervision was extended until August 1, 1995 because mother was not complying with court expectations. On July 26, 1995, the Department was granted another OTC on behalf of Caitlyn. On March 1, 1996, the OTC was vacated and Caitlyn was returned to her mother under an order of Protective Supervision for six (6) months. That order of Protective Supervision was extended for an additional six (6) months to March 1, 1997. The Protective Supervision was again extended to July 31, 1997, however, before the expiration of the Protective Supervision period, Caitlyn was committed to the Department on June 26, 1997. Her commitment was subsequently extended for one (1) year to July 26, 1998. The petition for termination of parental rights was filed on June 30, 1998.
The Department seeks this termination on the grounds that the mother consents to the termination of her parental rights; that the child has been abandoned by her father; that the child was previously adjudicated neglected and that each parent has failed CT Page 13556 to achieve such degree of personal rehabilitation as would encourage the belief that, within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child; that there is no ongoing parent-child relationship between the child and the father that ordinarily develops as a result of a parent having met on a continuing, day to day basis the physical, emotional, moral and educational needs of the child, and to allow further time for the establishment or re-establishment of the parent-child relationship would be detrimental to the best interests of the child; and that the mother's parental rights to another child under the age of seven (7) were previously terminated pursuant to a petition filed by the Commissioner of the Department of Children and Families. The Department further alleges that all of these grounds have existed for not less that one (1) year prior to June 30, 1998, when the action was commenced.
A default trial was held on September 25, 1998. The Court finds that all parties were duly served, and the mother has court appointed counsel. Neither mother nor father appeared at the trial, although mother's counsel was present. The father has never appeared at any hearings in connection with this termination, nor requested representation. The court finds from the testimony of the Department social worker and the Social Study for termination of Parental Rights that the Department's efforts to locate the father in the months before the trial were reasonable. The court finds that there are no other pending proceedings effecting the custody of this child. The court, having reviewed the verified petition, the social study and the various documents entered into evidence, and having heard the testimony of Katia L makes the following factual findings and reasonable inferences supported by those findings:
This child has no ongoing relationship with her father, Mario L. Caitlyn has no positive feelings for or memories of her father. She does not ask about him and she does not ask to see him. Since May 15, 1997, when Caitlyn was placed in the care and custody of the Department, Mario has not visited his child; has not sent cards or gifts; and had made no phone calls to his child. During this period he has not contacted the Petitioner to request information about her care or well being or to ask how he could contact his child. Since March 30, 1997 father's whereabouts have been unknown, despite reasonable efforts by the Department to locate him. CT Page 13557
A hearing was held on May 15, 1997 pursuant to an Order to Show Cause why an OTC should not be ordered. On that date an OTC was granted to the Department and Caitlyn went into the care of the Department for the third and final time. She had previously been removed from her mother's care on two (2) occasions based on her being in immediate danger in mother's care. On February 1, 1996, expectations and a Visitation/Reunification Plan were executed by the parties which clearly spelled out what steps mother must take to be reunified with her child, who was at that time in the care of the Department. (State's Exhibit 1). These expectations remained in effect upon commitment of the child. Lisa L. did not satisfactorily meet the court expectations.
The social worker for the Department testified that mother was not consistent with keeping the Department informed of her whereabouts. Mother was offered parenting classes which she did not complete. Ms. L. attended individual counseling sporadically and was terminated for non-compliance. Mother did not follow through with the Birth-to-Three Program for Caitlyn. Mother has not maintained a stable residence, moving four (4) times that the Department was aware of between February and April, 1998. The Department has not heard from Lisa since August 3, 1998, and was unaware of her whereabouts at the time of the trial. Mother did visit Caitlyn regularly until she moved to Virginia in May, 1998. The court further finds that the Department made reasonable efforts to locate mother prior to the trial in spite of her nomadic lifestyle.
Lisa L. initially consented to termination of her parental rights, but changed her mind, representing to the Department that she was coerced into fighting for her child by a roommate, but really didn't want to.
Rachel L., mother's second child, was born on June 8, 1994, two (2) months premature and with many special needs. Mother was unable to provide the special care that Rachel required and she was placed in foster care on July 26, 1995. Nicholas L. was born on June 8, 1995 with the medical condition gastroentestilitis. Mother was unable to meet his special needs and he was removed from her care on July 26, 1995. Both Rachel and Nicholas were adjudicated neglected and committed to the Department on February 1, 1996. Lisa L's parental rights to both children were terminated, pursuant to petitions filed by the Department, on March 26, 1998. CT Page 13558
Caitlyn has been in foster care since May, 1997. She is presently thriving in the home of her Godparent where her siblings Rachel and Nicholas are also placed. She seems happy with her new family, and being with her siblings. She is now five (5) years old.
 ADJUDICATION
With respect to the statutory grounds for termination of parental rights, the court finds, by clear and convincing evidence, that as of June 30, 1998, this child has been abandoned by her father, as he has not maintained a reasonable degree of interest, concern or responsibility for her. "A parent must maintain a reasonable degree of interest in the welfare of his or her child. `Maintain' implies a continuing reasonable degree of concern." In Re Michael M., 29 Conn. App. 112, 614 A.2d 832
(1992) quoting In Re Rayna M., 3 Conn. App. 23, 37-38,534 A.2d 897 (1987). He has had no contact with Caitlyn, has not sent gifts, cards or any financial support and has not called the Department to inquire about her welfare. The court further finds such circumstances has existed for an extended prior of time in excess of one (1) year prior to the date of the filing of the petition for termination of parental rights.
Based on father's total lack of contact with this child since May 15, 1997, the court also finds by clear and convincing evidence, that there is no ongoing parent-child relationship between father and child that ordinarily develops as a result of a parent having met on a continuing, day to day basis the physical, emotional, moral and educational needs of the child, and to allow further time for the establishment or re-establishment of the parent-child relationship would be detrimental to the best interests of this child. Caitlyn has no memories of her father and does not ask about him or to see him. The court further finds that this ground has existed for a period of time exceeding one (1) year prior to the filing of the petition for termination of parental rights.
The court finds that the petitioner has established by clear and convincing evidence, that both parents have failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of this child, they could assume a responsible position in the life of their child. C.G.S. Sec. 17a-112(c)(3)(B). The CT Page 13559 father has not made himself available for any involvement in Caitlyn's life. The mother was offered numerous services over an extended period of time and has simply not been able to benefit from these services or bring herself into a position in which she could provide adequate care for her child. Caitlyn was adjudicated neglected on August 11, 1994, and was finally committed to the Department on June 26, 1997, after being volleyed back and forth between the care of her mother and the Department several times. This child needs permanency and simply cannot wait any longer for the rehabilitation of her parents. The court further finds that this ground, with respect to each parent, has existed for a period of time exceeding one (1) year prior to the filing of the petition for termination of parental rights.
It was established by clear and convincing evidence that the mother had two (2) other children under the age of seven (7), Rachel and Nicholas, for which her parental rights were previously terminated pursuant to a petition filed by the Commissioner of the Department of Children and Families.
The ground of consent by mother is dismissed.
 REQUIRED FINDINGS
The court makes the following factual findings based upon the clear and convincing evidence required by C.G.S. Sec. 17a-112(e):
(1) Appropriate the timely services were provided by the Department to mother, including the Birth-to-Three Program and structured preschool program, individual counseling, parenting classes, mental health treatment, a parent aid and supervised visitation. Father's whereabouts have been unknown.
(2) The court finds by clear and convincing evidence that the Department made reasonable efforts to reunify this child with her mother. There were heroic and repeated efforts made, only to have each effort eventually fail. Mother received ongoing and significant services for reunification, but either did not take the necessary steps to rehabilitate herself or did not benefit from the services. Father has been unavailable for reunification services.
(3) The Department set reasonable and realistic goals embodied in the Expectations and Visitation/Reunification Plan CT Page 13560 dated February 1, 1996. Mother was unable to successfully comply with or benefit from services offered.
(4) The feelings and emotional ties of this child with respect to the parents, any guardian of the person and any person who has exercised physical care, custody and control of the child for at least one year and with whom the child has developed significant emotional ties. Caitlyn knows her mother. However, Caitlyn has been out of mother's care since May 15, 1997; mother has had no contact with the Department concerning her child since August 3, 1998; and is whereabouts unknown. Since June, 1998, Caitlyn has resided in the same foster home with her siblings. She has bonded with Rachel and is adjusting to Nicholas. She is doing well with the foster parents.
(5) Caitlyn is now five (5) years old.
(6) Finding regarding efforts of the parents to adjust their circumstances, conduct conditions to make it in the best interests of the child to return to their home in the foreseeable future and (A) the extent to which the parents have maintained contact with the child as part of an effort to reunite the child with the parents, provided that the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communications with the guardian or other custodian of the child. Father has made no effort to reunite with his child. Mother has made minimal efforts to avail herself of services offered to assist her in reuniting with her child; and had made minimal efforts to maintain contact with her child or the Department. The parents have been unable, as previously found, to adjust their conduct to make a return of this child to either of them feasible.
(7) Finding regarding the prevention of the parents from having a meaningful relationship, etc. No inappropriate conduct is noted. The Department has taken many steps to encourage Lisa to have a meaningful relationship with Caitlyn.
 DISPOSITION
Caitlyn has been in and out of foster care since July, 1994. She requires stability which neither of her parents is now, or within a reasonable period of time, able to provide for her. It is, therefore, in her best interests that a termination of parental rights enter with respect to the mother, Lisa L. and the CT Page 13561 father Mario L., and accordingly, a termination of their parental rights is ordered. The Commissioner of the Department of Children and Families is hereby appointed the statutory parent. A permanency plan for this child shall be submitted within 90 days. A review plan shall be filed in accordance with state and federal law.
Patricia Lilly Harleston, Judge